# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| C. JACKSON HOOVER, et al. on behalf of themselves and all others similarly situated, | ) ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) No. 1:21-cv-01299-SDG |
| STRATEGIC CAPITAL PARTNERS, LLC, et al., | ) ) ) ) ) |
| *Defendants*. | ) |

## PLAINTIFFS' RESPONSE TO DEFENDANT FRAZIER & DEETER, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

David R. Deary (*pro hac vice*)
W. Ralph Canada, Jr. (*pro hac vice*)
Jeven R. Sloan (GA Bar No. 652727)
Wilson E. Wray (*pro hac vice*)
John W. McKenzie (*pro hac vice*)
Donna Lee (*pro hac vice*)
Tyler M. Simpson (*pro hac vice*)
**LOEWINSOHN DEARY SIMON RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
davidd@ldsrlaw.com
ralphc@ldsrlaw.com
jevens@ldsrlaw.com
wilsonw@ldsrlaw.com
johnm@ldsrlaw.com
donnal@ldsrlaw.com
tylers@ldsrlaw.com

Edward J. Rappaport
(GA Bar No. 594841)
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone
erappaport@saylorlaw.com

*ATTORNEYS FOR PLAINTIFFS*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT..........................................................................................................3

    A. Plaintiffs' RICO claims are properly pleaded. ......................................3

        1. Plaintiffs satisfy RICO's proximate-cause element....................3

        2. Plaintiffs have standing to bring RICO claims. .........................6

        3. Plaintiffs have adequately alleged RICO's pattern requirement. ...................................................................................7

    B. Plaintiffs have properly alleged the malpractice claim.........................8

    C. There is no basis to dismiss the breach of fiduciary duty and disgorgement claims................................................................................11

    D. Plaintiffs' rescission claim is well-stated............................................14

    E. In the alternative, the Court should grant Plaintiffs leave to amend. ...................................................................................................14

III. CONCLUSION.....................................................................................................15

CERTIFICATE OF COMPLIANCE .................................................................................17

CERTIFICATE OF SERVICE ............................................................................................17

## I.   INTRODUCTION[1]

As Frazier & Deeter, LLC ("F&D") concedes (Mot. at 1, 3), Plaintiffs allege F&D prepared the partnership tax return and K-1s for the Bear Creek Syndicate's SCE Strategy. *See* FAC ¶¶ 235, 306-09; *see also id.* ¶ 518. But the Motion ignores the fact that Plaintiffs allege much more regarding F&D. The FAC alleges that "F&D knew and intended for the Bear Creek Syndicate to file the [Syndicate's] tax return with the IRS, which it did and for the members of the Bear Creek Syndicate, including Hebert, to use their pro-rata share of the resulting deduction, which they did." *Id.* ¶ 306. F&D also specifically "advised [Plaintiff] Hebert that the Appraisal Summary (Form 8283) would substantiate the charitable contribution deduction and allow Hebert to claim the charitable contribution deduction on his individual tax return." *Id.* ¶ 290. As set out in detail in the FAC, this appraisal valuation was grossly inflated. *Id.* ¶¶ 265-69, 290, 294. As one of the Defendants who was involved in "all aspects of the design and development of the SCE Strategy" and "draft[ing] and/or approv[ing] the SCE Strategy transaction documents … including the … Appraisals [and] Appraisal Summaries," F&D was fully aware of this fact. *Id.* ¶ 462; *see also id.* ¶ 104. It was also aware of the gross overvaluation because

---

[1] Plaintiffs incorporate their Response to Defendants' Consolidated Motion to Dismiss ("Consolidated Response") (Dkt. 237) herein in its entirety as permitted by the Court (Dkt. 137).

1

F&D prepared tax returns for the tracts adjoining the Bear Creek Property, thus showing that this was not just one-off tax preparation work. *See id.* ¶ 235 n.32; *see also id.* ¶¶ 236-39. F&D nevertheless reported each Bear Creek Syndicate's pro rata share of the inflated charitable contribution deduction on their respective K-1s. *Id.* ¶¶ 306-09. In reliance on "F&D's advice," Hebert claimed this deduction on his 2016 tax return. *Id.* ¶¶ 308-09.

Despite these allegations, F&D contends the FAC does not plausibly allege any claims against it because (1) Plaintiffs cannot establish the proximate causation, standing, and pattern requirements for their RICO claims (Mot. at 4-9), (2) Plaintiffs have not alleged a duty on the part of F&D to support the malpractice and breach of fiduciary duty claims (Mot. at 9-13),[2] (3) Plaintiffs' disgorgement claim is not proper because Plaintiffs did not pay any money to F&D (Mot. at 13-14), and (4) there is no contract between Plaintiffs and F&D on which to base a rescission claim (Mot. at 14). For the reasons set out below, these arguments are all without merit, and the Motion should be denied in its entirety. Alternatively, if Plaintiffs have not pleaded with the requisite specificity, then Plaintiffs should be allowed to amend.

---

[2] F&D also contends the breach of fiduciary claim should be dismissed as duplicate of the malpractice claim. Mot. at 12-13.

2

## II. ARGUMENT

A. **Plaintiffs' RICO claims are properly pleaded.**

1. **Plaintiffs satisfy RICO's proximate-cause element.**

F&D argues Plaintiffs cannot satisfy the proximate-cause element because there is not a "direct nexus" between any of F&D's predicate acts and Hebert's injuries. Mot. at 4. To satisfy this element of the RICO claims, Plaintiffs need only allege "'some direct relation' between the conduct and the injury." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287-88 (11th Cir. 2006)) (cited in Motion at 4, n.3). Moreover, the "injurious conduct need not be the sole cause of the plaintiffs' injuries." *Id.*

F&D attempts to show the lack of a direct nexus by focusing primarily on Hebert's decision to purchase a membership interest in the Bear Creek Syndicate instead of Hebert's filing of his 2016 tax return, which contained the deduction from the K-1 prepared by F&D. Mot. at 5-6.[3] However, the FAC alleges Plaintiffs and the Class were injured by the RICO predicate acts "in carrying out the transactions

---

[3] F&D repeats this flawed theme throughout the Motion. *See, e.g.*, Mot. at 2 (stating there is no allegation that Hebert communicated with F&D prior to signing Subscription Agreement), 3 (emphasizing that K-1 was prepared "nearly a year after Hebert invested"). This flawed theme is also prevalent throughout most of the Defendants' motions to dismiss.

and subsequently filing tax returns based on the Defendants' (and their co-conspirators') improper advice and their fraudulent and false misrepresentations and omissions." FAC ¶ 523. The injury Hebert incurred from claiming the SCE deduction on his 2016 tax return flowed directly from F&D's wrongful conduct.

Indeed, the last act necessary for the implementation of the SCE Strategy was done by F&D with respect to the Bear Creek Syndicate Transaction. *See, e.g.*, FAC ¶ 83(l); *see also id.* ¶¶ 306-09. **Until and unless** F&D sent K-1s to Hebert and the other members of the Syndicate and Hebert and the other members filed their tax returns in reliance on the deductions in the partnership tax return and K-1s, they could not have suffered their injuries from disallowance of the deduction. For this injury to occur, F&D had to *first* prepare the partnership return for the Syndicate containing the amount of the entire charitable contribution and *then* put the respective member's pro-rata share of the deduction on that member's K-1. FAC ¶¶ 79-82.

Moreover, both of these acts directly targeted Plaintiffs and the Class. While F&D appears to concede that F&D's transmittal of Hebert's K-1 was directly targeted at Hebert, F&D contends that the transmittal of the partnership return was directed at the Syndicate and not its members. Mot. at 6. But Plaintiffs and the Class (not the Syndicates) were the ones F&D and its co-conspirators sought to

4

entice and defraud into participating in the SCE Strategy. And it was Hebert and other members of the Bear Creek Syndicate to whom the tax deductions created by the SCE Strategy flowed and who claimed them on their tax returns as the F&D and the other Defendants intended. *See, e.g., id*. ¶¶ 306-09. As set out above, the partnership returns were the necessary predicate to the K-1s.

As for the transmittal of the K-1s, F&D's only arguments regarding whether there is a direct nexus between this act and Hebert's injuries resulting from disallowance of the deduction are (1) that Hebert has not suffered any such injuries and (2) that, even if Hebert had incurred such injuries, Plaintiffs have failed to allege "how or whether" the transmittal of the K-1 caused them. Mot. at 6. As for the first argument, F&D fails to account for the fact that the Syndicates are pass-through entities and, thus, the disallowance of the deductions taken by Hebert and the other Bear Creek Syndicate members is assured. *See* FAC ¶¶ 79-82, 310. Under these circumstances, Hebert and the other members have suffered a concrete injury. *See In re Equifax, Inc. Customer Data Sec. Breach Litigation*, No. 20-10249, 2021 WL 2250845, *6 (11th Cir. June 3, 2021) (a "material risk of harm" can constitute a concrete injury and, in such a circumstance, "the time, money, and effort spent mitigating that risk are also concrete injuries"). And as for the second argument, Plaintiffs have specifically alleged "how" and "whether" the transmittal of the K-1

caused Hebert's injuries from disallowance of the deduction. *See* pages 1-2 herein; *see also* FAC ¶¶ 308-09 (alleging Hebert claimed the deduction on his 2016 tax return in reliance on the K-1).

### 2.  Plaintiffs have standing to bring RICO claims.

In arguing Plaintiffs do not have standing to bring their RICO claims, F&D again relies on its flawed contention that there is no direct nexus between the alleged predicate acts and any injury. As set out in Section II.A.1 herein, this is incorrect.

The Motion also asserts that Hebert lacks standing as a matter of law because any injury he suffered from the disallowance of his deduction is "purely contingent on his affiliation with the [Syndicate]." Mot. at 7-8. However, that is not a correct statement of the law. In fact, the Eleventh Circuit held in *Harris v. Orange S.A.* (the case cited by F&D for the statement quoted above) that a plaintiff's "status as a creditor or stockholder … does not preclude standing for RICO violation if the plaintiff has alleged an injury proximately caused by the defendants' acts of racketeering that target the plaintiff." 636 F. App'x 476, 481 (11th Cir. 2015).

As set out in Section II.A.1 herein, F&D's acts did target Hebert. Moreover, Plaintiffs and the Class (not the Syndicates) were the ones F&D and its co-conspirators sought to entice and defraud into participating in the SCE Strategy. And it was Hebert and other members of the Bear Creek Syndicate to whom the tax

deductions created by the SCE Strategy flowed and who claimed them on their tax returns as the F&D and the other Defendants intended. *See, e.g.*, FAC ¶¶ 306-09. Accordingly, Hebert has standing to bring his claims. *See Lechter v. Aprio, LLP*, No. 1:20-cv-1325-AT, 2021 WL 4564816, *18 (N.D. Ga., Sept. 30, 2021) (finding plaintiffs had direct injury and standing to sue in similar syndicated conservation easement case).

### 3. Plaintiffs have adequately alleged RICO's pattern requirement.

The crux of F&D's argument regarding RICO's pattern requirement is that the predicate acts alleged against F&D must have been themselves fraudulent and misleading. Mot. at 8. In response to this argument, Plaintiffs incorporate herein Section II.B.2 of their Consolidated Response as though fully set out. Contrary to F&D's argument, mail and wire fraud offenses do not require that each predicate act, standing alone, amount to fraud. Instead, they merely require use of mail or wires ***in furtherance of*** a scheme to defraud. *See Atlanta Postal Credit Union v. Johnson*, No. 1:16-CV-04360-LMM, 2017 WL 4890539, at *3 (N.D. Ga. Aug. 15, 2017). In any event, Plaintiffs have described how the partnership return and the

corresponding K-1s were both fraudulent standing alone and furthered Defendants' fraudulent scheme. *See* pages 1-5 herein.[4]

**B.     Plaintiffs have properly alleged the malpractice claim.**

F&D is incorrect that "Georgia courts have not set forth a separate test for the existence of an accountant-client relationship" and therefore the correct standard for determining whether there was an ***accountant***-client relationship is the *Halligan **attorney***-client relationship standard. Mot. at 10-11 (citing *Consolidated Mgmt. Svc., Inc. v. Halligan*, 186 Ga. App. 621, 622 (1988)). In fact, Georgia does have an established standard for accountant-client relationships as recognized by the Georgia Court of Appeals six years after *Halligan*. *See First Nat. Bank of Newton Cty. v. Sparkmon*, 212 Ga. App. 558, 559 (1994) (recognizing that under Georgia law, "professional liability, ***including that of accountants***, extends to those persons who the professional is actually aware will rely upon the information he prepared") (emphasis added). This standard applies to any claim for negligent misrepresentation, negligence, professional negligence, or professional malpractice.

---

[4] Plaintiffs have also alleged how they were misled, unlike the plaintiffs in *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (cited in Mot. at 8, n. 14). *See* pages 1-5 herein.

8

*See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1158 (11th Cir. 2011).[5] Plaintiff Hebert fits directly into the *Sparkman* holding as the FAC specifically alleges he is within "the limited class of persons for whom the information was intended." FAC ¶ 584. In this regard, Plaintiffs allege that F&D prepared the Bear Creek partnership tax returns and K-1s with full knowledge of the fact that these documents were being used in connection with the SCE Strategy and would result in Hebert and members of the Class claiming charitable contribution deductions from the SCE Strategy on their individual tax returns. *See* § I, *supra*. The fact that F&D transmitted the K-1 with a cover letter that contained detailed instructions about how to prepare his individual tax return bolsters this point. FAC ¶ 308; Dkt. 186-2 at 5. That cover letter also ends with the sentence, "We thank you for the opportunity to serve *you*"—which, based on the addressee, refers to Plaintiff Hebert, not just the Syndicate. Dkt. 186-2 at 5 (emphasis added).

Additionally, Plaintiffs have pleaded (FAC ¶¶ 82, 104, 307-09) that the impact of the K-1 on Hebert's tax return was so substantial that F&D is considered under Federal law to be Hebert's "tax return preparer." *See Adler & Drobny, Ltd. v. United States*, 9 F.3d 627, 629-30 (7th Cir. 1993) ("[T]he sole preparer of a partnership

---

[5] Because F&D has failed to articulate any arguments for dismissal under the proper standard for the malpractice claim, F&D's motion to dismiss this claim should be denied for this reason alone.

return of income or a small business corporation income tax return is considered a preparer of a partner's or a shareholder's return if the entry or entries on the partnership or small business corporation return reportable on the partner's or shareholder's return constitute a substantial portion of the partner's or shareholder's return"). The Seventh Circuit has recognized that even "a single entry on a partner's tax return can have such an economic impact on the tax liability of that partner so as to be a 'substantial portion' of the partner's tax return itself." *Id*. at 630. Based on the proper standard for determining whether F&D's duties extended to Hebert and other Class members and F&D's status as a return preparer under federal law, the factual question of whether the members of the Syndicates were clients of F&D imply cannot be resolved against the Plaintiffs at this pleading stage. *See Lechter*, 2021 WL 4564816, at *38-39.[6]

---

[6] F&D tries to distinguish *Lechter* from the instant case by claiming Plaintiffs here have not alleged that F&D had any involvement with any SCEs before preparing the Bear Creek Syndicate's return. Mot. at 11, n. 25. But the *Lechter* holding did not depend on additional involvement beyond tax preparation. 2021 WL 4564816, at *39 ("the Court finds that, based on the extent of work the Aprio Defendants performed for Plaintiffs in preparing their tax returns or alternatively, documents to be attached to their returns there is at least a question of fact as to whether Plaintiffs were the Aprio Defendants' clients"). Regardless, as set out at pages 1-2 herein, this is not true as the FAC alleges that F&D was involved with the SCE Strategy well before preparing the Bear Creek return.

**C.    There is no basis to dismiss the breach of fiduciary duty and disgorgement claims.**

F&D advances a similar argument in support of its motion to dismiss the breach of fiduciary duty claim—*i.e.*, there is no basis to impose fiduciary duties on F&D.  Mot. at 12-13.  But yet again, F&D misstates the law.  F&D quotes *TSG Water Resources* as holding that "accountants owe no fiduciary duties to third parties who have ***no contractual relationship*** with the accountants."  Mot. at 12 (quoting *TSG Water Resources, Inc. v. D'Alba & Donovan Certified Public Accountants*, 366 F. Supp. 2d 1212, 1227 (S.D. Ga. 2004)) (emphasis added).  This excerpt excludes the first word from the sentence, which is "[g]enerally."  Obviously, a general rule is not without exceptions, a point completely erased by F&D.  The actual holding in *TSG Water Resources* is as follows: "***Generally***, accountants owe no fiduciary duties to third parties who have no contractual ***or other relationship*** with the accountants." 366 F. Supp. 2d at 1227 (emphasis added).  As the actual quote reveals, F&D also simply removed the words "or other" in an attempt to convince this Court that a contract was a necessary element of a breach of fiduciary claim against an accounting firm.

Indeed, this language— "or other"—is key here.  Under Georgia law, a fiduciary relationship can arise from a confidential professional relationship, which is broadly defined to include:

11

> [a]ny relationship … whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith. Such as the relationship between partners, principal and agent, etc.

O.C.G.A. § 23-2-58.  In addition, the existence of a confidential relationship under Georgia law is ordinarily a fact question and not appropriate for determination on the pleadings. *See, e.g.*, *Yarbrough v. Kirkland*, 249 Ga. App. 523, 527 (2001); *Gilmore v. Bell*, 223 Ga. App. 513, 514 (1996).[7]  F&D exercised a controlling influence over the conduct and interest of Hebert when it sent him a K-1 instructing him to claim a critical deduction on his tax return.

F&D also asks this Court to dismiss the breach of fiduciary duty claim as duplicative of the malpractice claim.  Mot. at 12-13.  However, a fiduciary duty claim is only duplicative of a negligence claim where "when [plaintiffs] rely on the *same* allegations" as a negligence claim.  *See, e.g., Hays v. Page Perry, LLC*, 26 F. Supp. 3d 1311, 1320 (N.D. Ga. 2014) (emphasis added).[8]  But Plaintiffs do not do

---

[7] Plaintiffs also incorporate herein Section II.D of their Consolidated Response.

[8] In its argument regarding this point, F&D once again misstates the law.  F&D cites *Smiley v. Blasingame, Burch, Garrard & Ashley, P.C.*, 352 Ga. App. 769, 776 (2019) as holding that a breach of fiduciary duty claim is duplicative of a malpractice claim where both claims allegedly caused the same injury. Mot. at 13, n. 34.  The *Smiley* Court did not hold that the same injury, standing alone, renders the claims duplicative.  Rather, the Court cited to several factors (including that the duties on which the claims were based arose "from the same source" and were breached "by

so here. The negligence allegations against F&D arise from its failure to comply with "the applicable standards of care and the applicable provisions of their respective codes of professional responsibility," FAC ¶ 583, whereas the breach of fiduciary duty claim focuses specifically on F&D's "failure[] to disclose [its] conflicts of interest," *id*. ¶ 608.[9] These differences in the duties and their source demonstrate that the claims are not duplicative. Moreover, where a defendant argues that there was no professional relationship sufficient to create a duty of care, a plaintiff is entitled to present both negligence and fiduciary duty breach claims to the jury. *Both v. Frantz*, 278 Ga. App. 556, 559 (2006).

F&D's argument that Hebert is not entitled to disgorgement because he did not pay anything to F&D also misses the mark. Disgorgement may be "measured by the benefit to the agent, rather than the detriment to the principal" where there is "a

---

the same conduct") and held that these factors ***together*** rendered the claims duplicative. As set forth in the text immediately following this footnote, the claims in this case do not arise from the same source and are not based on the same conduct.

[9] F&D's statement that the FAC does not identify any conflict on the part of F&D is not correct. The FAC alleges that F&D was part of the conspiracy to promote and implement the SCE Strategy (FAC ¶¶ 451-55, 462) while also purporting to perform independent accounting services related to the SCE Strategy (FAC ¶¶ 306—309). By its very nature, the conspiracy created a conflict of interest for F&D. However, should the Court determine that the allegations regarding F&D's conflict of interest should be alleged in more detail, Plaintiffs request leave to amend.

direct, causal link between the disloyal conduct and the damages." *Sto Corp. v. Cambron*, No. 1:01-cv-2417, 2005 WL 8155669, *2-3 (N.D. Ga. Jul. 8, 2005).[10]

### D. Plaintiffs' rescission claim is well-stated.

F&D is incorrect that Plaintiffs' rescission claim fails because there was no contract between any Plaintiff and F&D. Mot. at 14. Defendants collectively argue in their Consolidated Motion that so-called disclaimer language in various agreements negates Plaintiffs' reliance as a matter of law. F&D incorporates the Consolidated Motion in its entirety and therefore joins this argument even though it is not a party to those agreements. *See* Mot. at 1. Plaintiffs, in turn, have alleged that the agreements should be rescinded because of the fraud perpetrated by F&D and the other Defendants. *See* FAC ¶¶ 627-31. F&D should not be permitted to rely on purported disclaimers contained in agreements between other parties while at the same time arguing that Plaintiffs cannot seek rescission of these same agreements because F&D was not a party to them. There is no basis to dismiss this claim.

### E. In the alternative, the Court should grant Plaintiffs leave to amend.

In the event the Court finds any pleading deficiencies in the FAC as to F&D, Plaintiffs respectfully request that the Court grant them leave to amend their

---

[10] Furthermore, under well-settled equitable principles, third parties may be forced to disgorge ill-gotten gains even in cases where, unlike here, they are accused of no wrongdoing. *Hays v. Adam*, 512 F. Supp. 2d 1330, 1344 (N.D. Ga. 2007).

14

complaint to address any such deficiencies. "The Court normally grants a plaintiff the opportunity to amend before dismissing claims in a complaint for pleading defects." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, No. 1:12-CV-00258-WSD, 2012 WL 3065419, at *7 (N.D. Ga. July 27, 2012) (granting leave to amend to address Rule 9(b) pleading deficiencies); *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir.1988) (A district court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires'").

### III.  CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion to Dismiss in its entirety.  In the alternative, Plaintiffs request that the Court grant leave to amend.

Dated: February 11, 2022.

        Respectfully submitted,

        */s/ David R. Deary*
        David R. Deary*
        davidd@ldsrlaw.com
        W. Ralph Canada, Jr.*
        ralphc@ldsrlaw.com
        Jeven Sloan (GA Bar No. 652727)
        jevens@ldsrlaw.com
        Wilson E. Wray, Jr.*
        wilsonw@ldsrlaw.com
        John McKenzie*
        johnm@ldsrlaw.com
        Donna Lee*
        donnal@ldsrlaw.com
        Tyler M. Simpson*
        tylers@ldsrlaw.com
        **LOEWINSOHN DEARY SIMON RAY LLP**
        12377 Merit Drive, Suite 900
        Dallas, Texas 75251
        (214) 572-1700 Telephone
        (214) 572-1717 Facsimile
        * Admitted *Pro Hac Vice*

        Edward J. Rappaport (GA Bar No. 594841)
        erappaport@saylorlaw.com
        **THE SAYLOR LAW FIRM LLP**
        1201 W. Peachtree Street
        Suite 3220
        Atlanta, GA 30309
        (404) 892-4400 Telephone

        *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1.

*/s/ David R. Deary*
David R. Deary

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 11, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ David R. Deary*
David R. Deary
