**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| C. JACKSON HOOVER, *et al.* on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | No. 1:21-cv-01299-SEG |
| STRATEGIC CAPITAL PARTNERS, LLC, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND BACKGROUND ..............................................................1

ARGUMENT AND AUTHORITY ........................................................................2

I.   The standard for a motion for reconsideration. ................................................2

II.  This Court should reconsider its dismissal of claims against Nelson Mullins
     and the PCLG Defendants. ..............................................................................2

   A.  Plaintiffs' breach of fiduciary duty claim - Section III.G.3.a. (beginning on
       page 210 of the MTD Order).......................................................................3

   B.  Plaintiffs' Negligent Misrepresentation Claim - Section III.G.4.b.
       (beginning on page 221 of the MTD Order). ..............................................5

   C.  Plaintiffs' professional malpractice claim - Section III.G.5.b. (beginning on
       page 233 of the MTD Order).......................................................................8

   D.  Plaintiffs' fraud-based claims....................................................................11

III. This Court should reconsider its dismissal of the malpractice, negligent
     misrepresentation, and breach of fiduciary duty claims against Bennett
     Thrasher, Frazier & Deeter, and Conexus. ....................................................16

   A.  This Court erroneously held that these Defendants were not liable as
       Return Preparers. ......................................................................................16

   B.  Application to malpractice and breach of fiduciary duty............................20

   C.  Application to the negligent misrepresentation claim.................................23

IV.  Conclusion. ....................................................................................................24

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR RECONSIDERATION OF
## AUGUST 21, 2023 ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Pursuant to Local Rule 7.2(E), Plaintiffs respectfully move for reconsideration of those portions of the August 21, 2023 Order (Doc. 383) (the "MTD Order") identified herein.  Plaintiffs recognize that reconsideration should not be sought simply as a matter of course or for a second bite at the apple, but here contend that reconsideration is necessary to prevent manifest errors of law and fact with respect to the claims asserted against four of the Defendants.

## INTRODUCTION AND BACKGROUND

In the MTD Order, this Court ruled on a wide variety of claims asserted against a number of named Defendants. For the reasons set forth below, Plaintiffs seek reconsideration only of (i) the dismissal of all claims (but one) against those Attorney Defendants who wrote the Due Diligence Reports, (ii) the dismissal of the malpractice, negligent misrepresentation, and breach of fiduciary duty claims[1] against three  of the Return Preparer Defendants (as those terms are used in the MTD Order).[2]

---

[1] Plaintiffs are simultaneously filing a Motion for Leave to File Second Amended Complaint, seeking to add additional allegations regarding two of these Defendants (Frazier & Deeter and Conexus) to address pleading deficiencies the Court identified with respect to the Georgia RICO, conspiracy to violate Georgia RICO, fraud, and civil conspiracy claims against these two Defendants.

[2] Plaintiffs use the same defined terms as used in the MTD Order.

<u>**ARGUMENT AND AUTHORITY**</u>

**I.    The standard for a motion for reconsideration.**

"Reconsideration should only be granted where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Turk v. Morris, Manning & Martin, LLP*, No. 1:20-CV-2815-AT, 2023 WL 2359692, at *6 (N.D. Ga. Feb. 13, 2023) (numerous citations omitted); *U.S. v. Izquiero*, 448 F.3d 1269, 1276 (11th Cir. 2006). A trial court commits reversible error if it denies a motion to reconsider a ruling that is clearly erroneous. *See U.S. v. Jackson*, 669 F. App'x 544, 545 (11th Cir. 2016).

In this case, the two grounds for reconsideration rest, respectfully, on clear errors of fact in one case and, primarily, an error of law in the other, as discussed below.

**II.    This Court should reconsider its dismissal of claims against Nelson Mullins and the PCLG Defendants.**

The MTD Order broadly uses the term "Attorney Defendants" to refer to both (i) the law firms that wrote opinion letters delivered to the Syndicate LLCs and used in the promotional materials (*e.g.*, Morris Manning and Bryan Cave) and (ii) the law firms that wrote and directly furnished Due Diligence Reports to the Plaintiffs (*e.g.*, Nelson Mullins and the PCLG Defendants. For the negligent misrepresentation claim, the Court appeared to acknowledge this significant distinction in a footnote, but failed to credit that distinction for the other claims against Nelson Mullins and

2

the PCLG Defendants.  In so doing, the Court ignored allegations and extrinsic evidence that show the Due Diligence Reports (1) were addressed and sent directly to the Plaintiffs, (2) say "Attorney-Client Privileged Work Product," and (3) acknowledge that the Reports were "per your request," referring to the recipient-Plaintiffs.  These allegations and the extrinsic evidence provided by the PCLG Defendants unquestionably demonstrate that an attorney-client relationship existed between Plaintiffs (on the one hand) and Nelson Mullins and the PCLG Defendants (on the other hand).  The failure to find an attorney-client relationship in turn impacted the Court's decision with respect to claims for professional malpractice, breach of fiduciary duty, RICO, Georgia RICO, conspiracy, and fraud.  Plaintiffs respectfully ask that the Court reconsider its dismissal of these claims against Nelson Mullins and the PCLG Defendants in light of the allegations and evidence of a clear attorney-client relationship.

**A. Plaintiffs' breach of fiduciary duty claim - Section III.G.3.a. (beginning on page 210 of the MTD Order).**

The Court's ruling on Count VIII (contained in section III.G.3.a. of the MTD Order) dismissed Plaintiffs' breach of fiduciary duty claim against Nelson Mullins and the PCLG Defendants.  The Court then relied on the analysis in this section as the basis to also dismiss other claims against Nelson Mullins and the PCLG Defendants.

One of the primary bases of this ruling is that "Plaintiffs' only alleged

interactions with the Return Preparer, Attorney, and Appraiser Defendants involved the provision of professional services to the Syndicates and the Strategic Defendants after Plaintiffs received the PPMs." MTD Order at 210. This foundational proposition then led to this conclusion:

> Plaintiffs do not allege facts suggesting, directly or indirectly, that they independently engaged any of these professionals or had any independent relationships with them—certainly none that predated their decisions to invest in SCE Strategy transactions. Thus, because Plaintiffs have not alleged any relationships with these Defendants outside of those mediated by the LLCs, the following disclaimer language, which appears in each PPM, is essentially dispositive of the fiduciary duty question:

>> The Company has not engaged legal or other advisors for, or on behalf of, any investor. Each investor should, and is expected to consult his or her personal legal counsel, accountant, and other professional advisors as to legal, tax, economic, and related aspects of the investment described in this Memorandum and its suitability for such investor based on his, her, or its particular circumstances.

> (Doc. 168-2 at 14, 278, 543, 802, 935; see also id. at 31-32, 295, 559-60, 816-17, 953 (language clearly stating that legal counsel of the LLCs do not represent individual investors)).

> …there can be little doubt that this language clearly warned Plaintiffs against the conclusion that professionals engaged by the Syndicates were also undertaking confidential relationships with respect to Plaintiffs—the "investors"—as individuals.

*Id*. at 210-11.

On this rationale, the Court dismissed the fiduciary duty claims asserted

against Nelson Mullins and the PCLG Defendants.[3]  For the reasons set forth in the next two sections, Plaintiffs respectfully request that the Court reconsider as clear factual errors this ruling as it relates to Nelson Mullins and the PCLG Defendants.

**B.    Plaintiffs' Negligent Misrepresentation Claim - Section III.G.4.b. (beginning on page 221 of the MTD Order).**

In discussing the Negligent Misrepresentation claims, however, this Court recognizes that as to Nelson Mullins and the PCLG Defendants and their provision of Due Diligence Reports to the Plaintiffs, the situation differs in key respects from the remainder of the Attorney Defendants, including as to applicability of disclaimers in the PPMs:

> … **these disclaimers do not have any apparent application to the Due Diligence Reports, which were prepared by Defendants not named in the PPMs**. Indeed the FAC also contains additional allegations about the Due Diligence Reports that render it **plausible that the defendants providing them might have been "actually aware" that Plaintiffs would rely on them in connection with their individual tax decisions**. For example, **the Due Diligence Reports**, rather than being provided to the Syndicates, **were sent directly to individual Plaintiffs by the firms**. (Doc. 109, FAC ¶¶ 276, 402.) And **the PCLG Defendants' Due Diligence Report itself**—which they introduce in connection with their briefing and which the Court has considered as incorporated by reference in the FAC—**contains language that plausibly suggests that it was understood that**

---

[3] Plaintiffs' primary basis for seeking reconsideration of the dismissal of the fiduciary duty claim is its inconsistency with the facts found by the Court in the negligent misrepresentation ruling—specifically that the disclaimers in the PPMs were not even applicable to Nelson Mullins or the PCLG Defendants.  Alternatively, Plaintiffs also assert that it was clear error to conclude that the language of those disclaimers conclusively bars Plaintiffs from relying on the Due Diligence Report writers.

> **individual investors would rely on it**. (See Doc. 191-2; see also Doc. 109, FAC ¶ 402.)

*Id*. at 225-26, n.76 (emphasis added).

In addition, the PCLG Defendants' Due Diligence Report—which the PCLG Defendants attached as extrinsic evidence to their brief—in conjunction with the PCLG Defendants' briefing on this issue, shows that the Due Diligence Report was forwarded by email to Plaintiff Agnew on October 22, 2015, *before* the Subscription Agreement was signed by him on October 27, 2015.  *See* Doc. 191-2, pp. 5-11; Doc. 168, p. 13.  Further, in their briefing, the PCLG Defendants characterize their Due Diligence Report sent to Agnew (disregarding their other self-serving statements) as designed "to help Agnew analyze whether to invest in the Vista Hill transaction." *See* Doc. 191, p. 2.  Thus, this Court's statement on page 210 of the MTD Order that there is no showing that "Plaintiffs…had any independent relationships with [the Diligence Defendants]—certainly none that predated their decisions to invest in SCE Strategy transactions" is incorrect as to Plaintiff Agnew's relationship with the PCLG Defendants.  Respectfully, such a conclusion is also unwarranted as it applies generally to Nelson Mullins and the PCLG Defendants, the Plaintiffs, and the Due Diligence Reports.

This Court's analysis in section III.G.4.b, along with the PCLG Defendants' own filings, supports the following conclusions (among others):

(i) it is plausible that the Defendants providing the Due Diligence Reports

might have been "actually aware" that Plaintiffs would rely on them in connection

with their individual tax decisions;

(ii) the Due Diligence Reports were sent directly to individual Plaintiffs by

these Defendants;[4]

(iii) in at least the case of Plaintiff Agnew, the Report was sent *before* Agnew

signed the Subscription Agreement "to help Agnew analyze whether to invest in the

Vista Hill transaction"; and

(iv)  the disclaimers in the PPMs do not affect any of these conclusions.

Thus, this Court properly denied the motions to dismiss as they relate to the negligent

misrepresentation claims against Nelson Mullins and the PCLG Defendants.  The

logic of this ruling also indicates that the Court committed clear factual error in

dismissing the breach of fiduciary duty claim discussed above,[5] the professional

---

[4] The fact that Nelson Mullins and the PCLG Defendants sent Due Diligence Reports directly to Plaintiffs also suggests that the syndicates volunteered, at some point after they drafted the PPM disclaimers, to "engag[e] legal or other advisors for, or on behalf of, [the] investors."  The representation in the disclaimer that "[t]he Company has not engaged legal or other advisors for, or on behalf of, any investor" is backward-looking.  It is not an evergreen, forward-looking promise that the syndicates will never engage a legal advisor for or on behalf investors.

[5] The sole aspect of the Court's fiduciary duty ruling not resolved by the Court's negligent misrepresentation ruling is that of "confidentiality."  But as the Court recognizes (*see* MTD Order at 207-9), the presence of an attorney-client relationship provides this element.  And even if the Court were to find no attorney-client relationship exists, there are ample allegations in the FAC that supports a "confidential relationship."  Under Georgia law, a "confidential relationship," synonymous with a "fiduciary relationship," includes "[a]ny relationship . . . where one party is so situated as to exercise a controlling influence over the will, conduct,

malpractice claim (as discussed next), and Plaintiffs' fraud-based claims against these Defendants (as discussed thereafter).

## C. Plaintiffs' professional malpractice claim - Section III.G.5.b. (beginning on page 233 of the MTD Order).

Based almost entirely by reference to the Court's ruling on the breach of fiduciary duty claim discussed above, this Court dismissed the professional malpractice claim as it relates to Nelson Mullins and the PCLG Defendants.  MTD Order at 233.   Specifically, the Court ruled as to the Attorney Defendants generally—without delineation between the Opinion Letter Writers and the Due Diligence Report writers—that

> it is not plausible that Plaintiffs were in an attorney-client relationship with any of the Attorney Defendants. The language in the PPMs clearly and expressly precludes this possibility….

*Id.*  But as noted, earlier in the MTD Order, this Court explicitly held that "these disclaimers do not have any apparent application to the Due Diligence Reports, which were prepared by Defendants not named in the PPMs."  *Id.* at 225, n. 76.

---

and interest of another or where, from a similar relationship of mutual confidence." O.G.C.A. § 23-2-58. The FAC alleges Nelson Mullins and the PCLG Defendants exercised such a "controlling influence" over Plaintiffs in the context of the SCE Strategy. Plaintiffs did not, and could not, understand the highly technical rules that applied to their transactions, FAC ¶¶ 7-8, 338, and their lack of knowledge is the very reason they turned to the Due Diligence Writers for advice. *See id.* These allegations, at the very least, raise a fact question sufficient to survive this Motion. *See Lechter v. Aprio, LLP*, No. 1:20-cv-1325, 2021 WL 4564816, *40 (N.D. Ga. Sept. 30, 2021).

Disregarding the disclaimer in accordance with the MTD Order, there is no doubt that the record supports the existence of an attorney-client relationship between Plaintiffs, on the one hand, and Nelson Mullins and the PCLG Defendants on the other. Indeed, Plaintiffs specifically allege such a relationship in the Plaintiffs' First Amended Class Action Complaint ("FAC") in a variety of ways. For example, Plaintiffs alleged in paragraphs 94(f) and 94(i) of the FAC that Nelson Mullins and the PCLG Defendants issued "diligence" reports to the Plaintiffs and other Class Members/investors, purporting to support the tax bona fides of the transaction and identify any issues that needed to be corrected. Plaintiffs allege in paragraphs 153 and 276 of the FAC that the Due Diligence Report was sent directly to Plaintiff Hebert and members of the DeSoto Syndicate and the Bear Creek Syndicate via mail or email. Paragraphs 114 and 367 contain charts outlining Nelson Mullins and PCLG Defendants' specific roles in the transactions, including the fact that those firms provided the due diligence "for the individual investors." Finally, paragraph 402 avers that "PLCG attorney Honeywill … sent a 'Due Diligence Report' on PCLG's behalf directly to [Plaintiff] Agnew and Class members" and that "[t]here can be no question that the PCLG Defendants were acting as an attorney for Agnew and Class members because the Due Diligence Report was addressed to them and began with 'per your request.'"

PCLG's own exhibits also demonstrate an attorney-client relationship. As

discussed above and in the MTD Order, PCLG's attorneys attached as an example the transmittal email from PCLG to Agnew which states that it relates to "your" investment. *See* Doc. 191-2, p. 5. In addition, they attach the actual Due Diligence Report, which shows (i) the Report is addressed to Agnew, (ii) the Report says it is "Attorney-Client Privileged Work Product" (which means sending the report to Agnew could have waived the privilege if the syndicate was the real client), (iii) the Report says it is "per your request," and (iv) the Report is replete with other references to Agnew in particular ("the purpose of this report is to help you analyze your potential investment"). *Id*. at 6-11.

To make the argument that Plaintiffs failed to allege an attorney-client relationship, Nelson Mullins focuses on the existence of a contract and who paid the fees, although in Georgia, "contractual formalities are not essential" and "payment of a fee does not necessarily demonstrate the existence of the relationship." *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229-30 (1987).[6] As Nelson Mullins's own cited cases recognize, an attorney-client relationship may be "inferred from the conduct of the parties." *Abdulla v. Klosinski*, 523 F. App'x 580, 584-85 (11th Cir.

---

[6] Indeed, courts have recognized that "to conclude … that [the professional] was not paid by the limited partners is to exalt form over substance. ... the partnerships were capitalized with funds provided entirely by the limited partners. The purpose of these partnerships was to create income and loss deductions for the limited partners…. In substance, [the professional] worked for the limited partners. In reality, he was paid by them with money they invested in the partnerships." *Goulding v. United States*, 717 F. Supp. 545, 551 (N.D. Ill. 1989), *aff'd*, 957 F.2d 1420 (7th Cir. 1992).

2013); *In re Infocure Securities Litigation*, 210 F. Supp. 2d 1331, 1367 (N.D. Ga. 2002).

The "basic question" is "whether it has been sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to the profession." *Id.* The foregoing allegations and facts do just that. Finally, "even if no express attorney-client relationship existed," Georgia law provides that "liability for professional acts extends not only to the actual client but also to third parties who rely upon the professional's advice in situations where the professional was manifestly aware of the use to which the information was to be put and intended that it be so used." *Kahn v. Britt*, 330 Ga. App. 377, 388 (2014).

Plaintiffs respectfully request that the Court reconsider this ruling as it relates to Nelson Mullins and the PCLG Defendants, given its other findings and the record (including the allegations of the FAC) as discussed above.

### D.    Plaintiffs' fraud-based claims.

Finally, this Court also dismissed the fraud-based claims (RICO, Georgia RICO, conspiracy, and fraud) Plaintiffs asserted against Nelson Mullins and the PCLG Defendants.[7] As to the RICO claims against Nelson Mullins, this Court held that "the FAC does not plausibly plead, in anything but a conclusory fashion, that

---

[7] Plaintiffs did not assert Federal or Georgia RICO claims against the PCLG Defendants; although, they did assert a RICO conspiracy claim.

Nelson Mullins knew the appraisal values were inflated or that it offered opinions it knew to be false" and that "Plaintiffs have not alleged a confidential relationship with Nelson Mullins." MTD Order at 135. As to the RICO conspiracy and civil conspiracy claims against Nelson Mullins and the PCLG Defendants, this Court ruled that "no plausible factual allegations permit the Court to infer that these law firms knowingly agreed to join in a fraudulent scheme." *Id*. at 198, 205-06. Finally, the Court dismissed the fraud claims against Nelson Mullins and the PCLG Defendants because it found that "Plaintiffs have either failed to point to actionable fraudulent statements in these letters or failed to plead facts rendering it plausible that [Defendants] knew any of their representations, to the extent those representations touch on issues of fact, to be false." *Id*. at 203-04.

Respectfully, the basis of these rulings is factually erroneous. That Plaintiffs have plausibly made a showing of a fiduciary or confidential relationship is demonstrated above. Plaintiffs also plausibly allege that Nelson Mullins knew or should have known their misrepresentations and omissions[8], including as to the appraisals, were false due to:

(i) Nelson Mullins' "specialized knowledge of tax law and regulations as well as its knowledge of the goals of the conspiracy and RICO enterprise," FAC ¶ 338.

---

[8] Given the attorney-client or at least confidential relationship Plaintiffs have plausibly alleged, these Defendants could also be liable for liable for matters of opinion. MTD Order at 123.

(ii) The IRS Notices and warnings which put professionals on notice, *id.* ¶¶ 68-77, including *inter alia* "IRS News Release, IR-81-122," the provisions of the Deficit Reduction Act of 1984 and regulations issued pursuant thereto, IRS Notice 2004-41, IRS Notice 2017-10, the inclusion of SCEs on the 2019 "Dirty Dozen" list of tax scams to avoid, and the IRS' warning in IR-2020-130 that it "will continue to disallow the claimed tax benefits [of SCEs], asserting civil penalties to the fullest extent, considering criminal sanctions in appropriate cases, and continuing to pursue litigation of the cases that are not otherwise resolved administratively."

(iii) Nelson Mullins' extensive experience in handling SCE Strategy transactions, often with the same Defendants and at times on the same tract of property. *Id.* ¶¶ 115, 156, 279.[9]

(iv) Nelson Mullin's work on the Due Diligence Reports and opinion letters, which would have entailed an analysis of all relevant SCE Strategy documents, including the grossly inflated appraisals. *Id.* ¶¶ 94(f), 94(g), 338-44 ("Nelson Mullins copied large portions of the prior opinion letters drafted by the MMM

---

[9] Describing how "Nelson Mullins (a) had done worked for Strategic and Bridge Capital on other conservation easement transactions and had issued similar opinion letters for those transactions (i.e., Strategic and Bridge Capital were important and valuable clients of the firm), and (b) was being paid out of the closing proceeds from the closing of the Transaction…. two facts [that] destroyed any independence that Nelson Mullins had. It also meant that Nelson Mullins' fee was contingent on the Bear Creek Syndicate Transaction closing, which fee would not have been paid in its entirety if some or all of the members had decided to back out of the Transaction."

Defendants without doing any independent analysis of the analysis or the conclusions in those letters.").

Likewise, Plaintiffs have plausibly alleged that the PCLG Defendants knew or should have known their misrepresentations and omissions, including as to the appraisals, were false due to, *inter alia*, the following:

(i) The PCLG Defendants had a longstanding relationship with the MMM Defendants, one of the developers of the SCE Strategy. Based on this relationship and their reputation within the SCE industry, PCLG and its attorneys authored numerous due diligence reports and other documents in connection with implementing SCE Strategies between 2013 and 2016, for dozens of syndicates. *Id.* ¶ 401.

(ii) The stated objective of the Due Diligence Report sent to Plaintiffs was to "identify any material issues that may exist with respect to the Transaction's legal agreements and tax structure and propose solutions to the extent any identified risks may be mitigated." The PCLG Defendants purported to have reviewed and evaluated various transactional documents, including Bryan Cave's Tax Opinion, Van Sant and Wingard's Appraisal, McCalip's report, the Deed, and the BDR. But the Due Diligence Report states that these documents were in "draft form" at the time and the PCLG Defendants "assumed the documents that are ultimately executed will be substantially similar . . ." This means that the PCLG Defendants heaped assumption

14

on top of assumption to come to its fraudulent conclusions in violation of IRS Circular 230, which governed these tax opinion letters. For example, the Bryan Cave draft opinion letter assumed that various aspects of the Appraisal were true and correct, and the PCLG Defendants, in turn, accepted the assumptions in the Bryan Cave draft opinion letter as true without independent investigation of the underlying facts. Moreover, because the Bryan Cave draft opinion letter was dated as of December 2015, the PCLG Defendants either reviewed a much earlier draft or falsely stated that they had reviewed a draft opinion letter that did not yet even exist. *Id.* ¶ 403.

(iii) The Due Diligence Report also stated that the PCLG Defendants reviewed an "Appraisal Review" by the Clark Defendants, which purported to "corroborate the findings, methodologies, valuation estimates, and other conclusions reached in the [Van Sant and Wingard Defendants'] Appraisal." However, Agnew does not recall ever receiving such an Appraisal Review. *Id.* ¶ 404.

(iv) Plaintiffs have identified multiple misrepresentations and omissions of material fact with a detailed explanation of why the PCLG Defendants should have known of their falsity. *Id*. ¶ 405.

(v) Because of their relationships with other of the Defendants, the PCLG Defendants did not provide the promised "independent" opinion letter. *Id*. ¶ 406. *See generally* FAC ¶¶ 401-08.

15

The PCLG Defendants have in the past pointed to cautionary language in the Report, but this language (i) failed to comply with IRS Circular 230 in that it purported to disclaim a duty to independently investigate underlying assumptions, *id*. ¶ 403, and (ii) was not entirely truthful in that Plaintiffs allege that the PCLG Defendants hid materials facts from them, *id.* ¶ 405.

Finally, the PCLG Defendants misunderstand the nature of Agnew's reliance—he mainly relied on their counsel in deciding to claim the charitable contribution deduction on his tax return.  *Id.* ¶ 426. Thus, Agnew's reliance on other Defendants in deciding to undertake the Transaction does not preclude his reliance on the Due Diligence Report.

At a minimum, these facts above raise a reasonable inference of scienter and reliance as to both Nelson Mullins and the PCLG Defendants.  Thus, the fraud-based claims should be reconsidered as well.

## III.   This Court should reconsider its dismissal of the malpractice, negligent misrepresentation, and breach of fiduciary duty claims against Bennett Thrasher, Frazier & Deeter, and Conexus.

### A.   This Court erroneously held that these Defendants were not liable as Return Preparers.

This Court dismissed the malpractice, negligent misrepresentation, and breach

16

of fiduciary duty claims[10] against Bennett Thrasher, Frazier & Deeter, and Conexus—three of the Return Preparers for the Syndicate LLCs and the corresponding K-1s issued to each individual who invested in those LLCs (*i.e.*, the Plaintiffs). Plaintiffs respectfully submit that the Court committed a clear legal error by ignoring authority that holds that a K-1 preparer can be recognized as a preparer of the tax return belonging to the individual to whom the K-1 is issued and, as such, the mere act of preparing and delivering the K-1s constitutes an actionable representation.

In rejecting this argument, this Court held that:

> *Adler & Drobny* [the case cited by Plaintiffs or the above position] presented the question of whether an accountant was liable to the *United States* for penalties assessed under I.R.C. § 6694(b); its connection with the instant state law issues is tenuous at best.

MTD Order at 211-12, n. 71. While that may be the context in which the *Adler* case arose, its rationale is not nearly so limited. In fact, the case relies for its holding on a Federal statute—26 U.S.C. § 7701(a)(36)(A)—and goes into great detail to explain the underlying statute and regulations:

> Internal Revenue Code § 7701(a)(36) broadly defines an "income tax return preparer" to include any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any tax return or refund claim. Significantly, the preparation of a substantial portion of a return is to be treated as if it were the preparation of the

---

[10] As previously noted, the Court dismissed certain other claims against Frazier & Detter and Conexus and those are the subject of Plaintiffs' separate Motion for Leave to Amend.

entire return. The pertinent Treasury Regulations provide that the sole preparer of a partnership tax return can also be a preparer of the individual partners' tax returns:

> [T]he sole preparer of a partnership return of income or a small business corporation income tax return is considered a preparer of a partner's or a shareholder's return if the entry or entries on the partnership or small business corporation return reportable on the partner's or shareholder's return constitute a substantial portion of the partner's or shareholder's return.

26 C.F.R. § 301.7701–15(b)(3) (1977).[11]

*Adler & Drobny, Ltd. v. United States*, 9 F.3d 627, 629–30 (7th Cir. 1993).[12]  The statute itself makes clear that the definitions it contains apply to the entire title—that is, all of Title 26 relating to income taxes and taxpayers, not just penalty provisions. And although most cases under § 7701(a)(36)(A) have admittedly arisen in the penalty context, courts have applied it in other contexts besides just criminal penalties. *See, e.g., Jesse E. Brannen, III, P.C. v. United States*, 682 F.3d 1316, 1319 (11th Cir. 2012) ("Because the term 'tax return preparer' is defined by 26 U.S.C. § 7701(a)(36) as meaning any person who prepares tax returns for others for compensation, this requirement—that any return prepared by a tax return preparer

---

[11] 26 CFR § 301.7701-15(a) provides that a person who furnishes to a taxpayer or other preparer sufficient information and advice so that completion of the return is largely a mechanical or clerical matter is considered an "income tax return preparer" even though that person does not actually place or review placement of information on the return.

[12] Counsel apologizes for not more explicitly pointing this underlying statutory basis in their prior briefing.

bear his/her assigned identifying number—means that a tax return preparer cannot prepare tax returns for others for compensation without having the required identifying number."); *US v. Ernst & Whinney*, 735 F.2d 1296, 1299 (11th Cir. 1984) (in case involving IRS request for injunction, Eleventh Circuit recognizes 7701(a)(36)(A) as the guidepost to determine "[w]hether or not Ernst is a 'tax preparer' subject to § 7407 …."); *see also* § 56:6. Related Returns, 15 Mertens Law of Fed. Income Tax'n § 56:6 ("a return preparer of a partnership return or an S corporation return is considered a return preparer for a partner's or a shareholder's return where the entry or entries on the pass-through entities' return constitute a 'substantial portion' of the partner's or shareholder's return.").  And although also in the penalty context, Judge Totenberg recently applied the statute to hold that a 12(b)(6) motion to dismiss should be denied in favor of the Government's argument that ***an appraiser*** in a conservation easement transaction could be held, at least for purpose of the pleadings, to be a tax return preparer under § 7701(a)(36).  *United States v. Zak*, 426 F. Supp. 3d 1365, 1374–75 (N.D. Ga. 2019).

Respectfully, this Court's distinction of the case from our facts based on the penalty context in which it arose is clear legal error.  And Plaintiffs have plausibly alleged the substantiality of the items passing on to their tax returns from the partnership returns prepared for the Syndicate LLCs by Bennett Thrasher, Frazier & Deeter, and Conexus.  *See* FAC ¶ 123(a) (in DeSoto transaction, representations that

"Federal benefits [of SCEs] are typically priced between a 3.5-to-1.0 and a 4.5-to-1.0 ratio,"), ¶ 243 (in Bear Creek transaction, representations that "the federal tax benefits were usually $4 in tax savings for every $1 invested), ¶ 373 (in Vista Hill transaction, representations that "the federal tax benefits were usually $4 in tax savings for every $1 invested."). This Court should therefore apply § 7701(a)(36)(A) to hold that Bennett Thrasher, Frazier & Deeter, and Conexus can be liable as tax return preparers of Plaintiffs' individual returns.

**B. Application to malpractice and breach of fiduciary duty.**

With respect to the malpractice and breach of fiduciary duty claims, this Court held that there was no basis for holding that Plaintiffs had a professional or confidential relationship with these Return Preparer Defendants. MTD Order at 210-14 (with respect to breach of fiduciary duty), 233-26 (with respect to malpractice claim). However, as Plaintiff's tax return preparers under 26 USC § 7701(a)(36)(A) and pursuant to applicable Georgia case law, these Defendants were in a confidential relationship (accountant-client) with, and owed a duty to, those Plaintiffs in the DeSoto, Bear Creek, and Vista Hills transactions to use reasonable care in the preparation of their returns. *See Badische Corp. v. Caylor*, 257 Ga. 131, 132–33, 356 S.E.2d 198 (1987) ("professionals, including accountants, owe a duty under Georgia law to "those persons ... who the professional is actually aware will rely upon the information he prepared."); *Hewitt v. Walker*, 226 Ga. App. 764, 764, 487

S.E.2d 603, 604 (1997)("[T]he law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.").

Moreover, in Georgia, a professional's duties extend to those the professional knows or should know will rely upon the professional's advice. Thus, even in the absence of a direct professional relationship, Georgia courts have recognized that an accountant who prepared investment analyses to his client's investment partnerships owed a duty not only to his clients and their investors, but also to investors in the investment firms that the accountant should have been "aware w[ould] rely upon the information he prepared." *Abrams & Wofsy v. Renaissance Inv. Corp.*, 820 F. Supp. 1519, 1531 (N.D. Ga. 1993); *see also Travelers Indem. Co. v. A.M. Pullen & Co.*, 161 Ga. App. 784, 784-86 (1982) (plaintiff could sue an accountant for negligence and fraud even though it was not a client, given that the evidence showed the plaintiff foreseeably relied upon the financial statements in issuing the bonds and therefore was in a "limited class of persons who the [accountant] may reasonably expect to rely on his services.").

Against this legal backdrop, this Court's holding that Plaintiffs have not alleged any basis to impose a  professional and/or confidential relationship between Bennett Thrasher, Frazier & Deeter, and Conexus, on the one hand, and Plaintiffs,

on the other hand, or to impose duties running from these Defendants to Plaintiffs is clear legal error.  This relationship and these duties are to be imposed as a matter of law.  Moreover, *Richard B. LeVine, Inc. v. Higashi*, 32 Cal. Rptr. 3d 244, 258-259 (Cal. App. 4th Dist. 2005), cannot override the provisions of the Internal Revenue Code as it impacts the Federal tax law issue of who is a return preparer and thus who owes a duty to the tax return client.  At the very least, as this Court has noted, "[p]rofessional-client relationships, while usually matters of contract, can be implied from the circumstances. *See In re Dowdy*, 277 S.E.2d 36, 38 (Ga. 1981) ('Generally, the relation of attorney and client is a matter of contract but the contract may be express, or implied from the conduct of the parties.')."  MTD Order at 234.

Finally, the disclaimers in the PPMs do not override this outcome.  *See* MTD Order at 210-13 (as to breach of fiduciary duty claim), 234-35 (as to malpractice claim), as those disclaimers simply express that the Syndicate LLC has not as of that time engaged advisors on Plaintiffs' behalf and that the individual investor *should* hire his own advisors.  By no means do the disclaimers unequivocally state that the Syndicate LLC will not in the future hire professionals to advise Plaintiffs, especially given that the disclaimer language should be construed against the Defendants. *Delta Air Lines, Inc. v. McDonnell Douglas Corp*., 503 F.2d 239, 245 (5th Cir. 1974) (disclaimer clauses are to be strictly construed); *Grey v. Hayes-Sammons Chem. Co*., 310 F.2d 291, 303 (5th Cir. 1962) ("a disclaimer is to be strictly construed against

the seller").   Additionally, the Court's interpretation of the disclaimer language in the context of the breach of fiduciary duty and malpractice claims[13] is at odds with the statutory and judicial authority cited above that establishes an accountant-client relationship between Bennett Thrasher, Frazier Deeter, and Conexus, on the one hand, and the Plaintiffs, on the other hand as a matter of law.   And, as pointed out earlier, in reality it was the limited members who funded the very services provided (or not) by the Return Preparers.   At the very least, this Court should follow *United States v. Zak* and rule that the claims are sufficiently stated to survive a motion to dismiss.

Given the clear language of 26 USC § 7701(a)(36)(A), it would be legal error for the Court not to do so.

## C. Application to the negligent misrepresentation claim.

With respect to the negligent misrepresentation claim, this Court held that Plaintiffs could not meet the heightened requirement under Georgia law that the supplier of false information that originated elsewhere can only be liable if that supplier represented that the false information was "legitimate, accurate, or trustworthy."   MTD Order at 227 (citing *Glob. Payments, Inc. v. InComm Fin. Services, Inc.*, 843 S.E.2d 821, 824 (Ga. 2020)); *accord Smiley v. S&J Investments, Inc.*, 580 S.E.2d 283, 287-88 (Ga. Ct. App. 2003) (cited in MTD Order at 219).  This

---

[13] MTD Order at 210-211, 234-25.

Court held that Plaintiffs had failed to allege that Bennett Thrasher, Frazier Deeter, or Conexus had made such a representation.

In so holding, this Court committed legal error by not taking into account the authorities discussed above that demonstrate that the preparation and delivery of the K-1s was done pursuant to affirmative duties imposed as a matter of law and was itself an affirmative representation as to the legitimacy and accuracy of the information contained therein.  This is a material distinction between the instant case and *Glob. Payments* and *Smiley* where there was no allegation at all that the supplier of third-party information mad any representation as to the accuracy of the information.

## IV.    Conclusion.

This Court should reconsider the dismissals of the claims against Nelson Mullins and the PCLG Defendants.  Respectfully, a comparison of the Court's analysis and conclusions as to the negligent misrepresentation claim not dismissed with the factual basis for dismissing all other claims against these Defendants show those dismissals to be in error.

This Court should reconsider the dismissals of claims for malpractice, negligence misrepresentation and breach of fiduciary duty against Bennett Thrasher, Frazier & Deeter, and Conexus, for the reasons discussed above.

This 18th day of September, 2023.

Respectfully submitted,

/s/ *Jeven R. Sloan*
David R. Deary (admitted *pro hac vice*)
W. Ralph Canada, Jr. (admitted *pro hac vice*)
Jeven Sloan (GA Bar No. 652727)
John McKenzie (admitted *pro hac vice*)
Donna Lee (admitted *pro hac vice*)
Tyler M. Simpson (admitted *pro hac vice*)
**DEARY RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
davidd@dearyray.com
ralphc@dearyray.com
jevens@dearyray.com
johnm@dearyray.com
donnal@dearyray.com
tylers@dearyray.com

Edward J. Rappaport (GA Bar No. 594841)
erappaport@saylorlaw.com
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 18, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Jeven R. Sloan*
Jeven R. Sloan

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1

*/s/ Jeven R. Sloan*
Jeven R. Sloan