IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| C. JACKSON HOOVER, *et al.* on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>STRATEGIC CAPITAL PARTNERS, LLC, *et al.*,<br><br>*Defendants*. | No. 1:21-cv-01299-SEG |

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Under Federal Rule of Civil Procedure 15(a)(2), Plaintiffs respectfully move this Court for leave to file a Second Amended Complaint that addresses the aspects of the Court's Order on the Defendants' Motions to Dismiss (Dkt. 383) ("MTD Order") that held Plaintiffs had not sufficiently alleged facts that would plausibly suggest that Defendants Frazier & Deeter ("F&D") and Cherry Bekaert f/k/a Conexus ("Conexus") knew that the representations contained in the Schedule K-1s and associated cover letters were fraudulent. *See* MTD Order at 142-45 and n. 48; *see also* MTD Order at 199, 205-06. Plaintiffs attach to the Motion a redlined and clean version of the proposed Second Amended Complaint for the Court's

1

convenience. The substantive changes in the Second Amended Complaint can be found in paragraphs 106-115.

It is in the interests of justice to allow the amendment because Plaintiffs have pleaded additional facts in the amendment with regard to F&D and Conexus that are substantially similar to the allegations against Defendant Bennett Thrasher, which the Court held *were* sufficient to "raise[] the plausible inference that Bennett Thrasher knew the appraisal values underlying the K-1s were fraudulently inflated, and they distributed them to Plaintiffs knowing that Plaintiffs would report those inflated deductions on their tax returns." MTD Order at 148 (citing First Am. Compl. ¶¶ 105, 176, 359-61). These additional allegations address specific deficiencies that the Court observed in the First Amended Complaint and, as explained below, should result in the Plaintiffs being allowed to move forward with their claim of violation of Georgia RICO (Count III) against F&D and claims of conspiracy to violate Georgia RICO (Count IV), Fraud (Count IX), and Civil Conspiracy (Count XII against both F&D and Conexus).[1]

## INTRODUCTION AND BACKGROUND

In the MTD Order, this Court held Plaintiffs' fraud-based claims against F&D and Conexus were barred because "'there are no allegations that would plausibly

---

[1] Plaintiffs are simultaneously herewith also filing a Motion for Reconsideration of this Court's dismissal of the malpractice, breach of fiduciary duty, and negligent misrepresentation claims against F&D and Conexus.

2

suggest that [these Defendants]² *knew* that these representations' – those contained in the Schedule K-1 and the associated cover letters – 'were fraudulent.'" MTD Order at 143 (quoting *Turk v. Morris, Manning, & Martin, LLP*, 593 F. Supp. 3d 1258, 1306) (N.D. Ga. 2022) (italics in original). This Court explained further that "there is nothing in the FAC to suggest that [these Defendants] had experience with land appraisals such that they necessarily would have identified a bogus appraisal, or even that these parties, in performing their tax work, did more than report numbers that had been generated by other parties." MTD Order at 144; *accord* MTD Order at 142, n.48. In contrast, this Court reached a different conclusion on this same issue with respect to a different return preparer, Defendant Bennett Thrasher, based on "factual allegations that it had been heavily involved in another line of SCE Strategy transactions predicated on inflated deductions," including that Bennett Thrasher referred many of its existing clients to participate in SCE Strategy transactions with a different sponsor and also advised this other sponsor how to structure the transaction and manipulate the appraised value. MTD Order at 145. This Court further explained that these allegations made "at least plausible that [Bennett

---

² While this language from the MTD Order referred specifically to F&D and another group of defendants (*i.e.*, the Langford Defendants), the Court clarified in note 48 of the MTD Order that, with respect to Conexus, Plaintiffs' allegations of fraud "face the same difficulties" and do not "plausibly suggest it knew of the underlying fraud or was engaged in anything other than ordinary business activities." *See also* MTD Order at 199, 204, 205-06.

3

Thrasher] would have known, or recognized, similar, improperly inflated appraisal values in the SCE Strategy transactions in this case." MTD Order at 146.

As demonstrated below, Plaintiffs can, if given the chance, allege that F&D was also involved in referring clients to SCE Strategy transactions with a different sponsor and was also heavily involved in promoting these other transactions and working directly with the sponsors of these transactions in implementing these other transactions. The proposed allegations further allege that Conexus was involved in referring clients to *Strategic-sponsored*, SCE Strategy transactions that would be covered by the class definition in this case. Plaintiffs have also detailed specific accounting standards and duties that these Return Preparer Defendants had that required them to look beyond the numbers provided by the appraisers and sponsors. *See* Second Am. Compl. ¶¶ 111-15. These additional allegations also demonstrate that, in connection with the Strategic-sponsored and other similar SCE Strategy transactions, F&D and Cherry Bekaert gained knowledge and information that would raise the plausible inference that they knew the appraisals associated with the SCE Strategy transactions in the instant case were inflated and unsupportable. *See id.* ¶ 108 (describing Battelle Glover transaction for which F&D prepared tax return, which involved increases in value of 454x and 703x), ¶ 110 (describing how a Conexus partner participated in a SCE Strategy transaction with a different sponsor

and was given a "friends and family" deal of a 15:1 ratio of tax savings to investment as opposed to the 5:1 ratio given to non-insiders).

## AMENDMENT HISTORY

Plaintiffs filed their Original Complaint on March 30, 2021 (Dkt. 1). On June 29, 2021, prior to any motion to dismiss or other responsive pleading being filed by any Defendant, Plaintiffs filed their First Amended Complaint as a matter of right (Dkt. 109). Plaintiffs have not previously sought leave to amend.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Leave to amend should be freely given.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleadings with leave of court, and the Rule instructs that a court "should freely give leave when justice so requires." A district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Rule 15(a). *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Sheba Ethiopian Rest., Inc. v. DeKalb County, Ga.*, 820 F. App'x 889, 899 (11th Cir. 2020). Generally, a district court must give plaintiffs "at least one chance to amend the complaint" before it dismisses the complaint with prejudice if a "more carefully drafted complaint might state a claim." *Bryant*, 252 F.3d at 1163. This liberal policy of "permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend,

the discretion of the district court is not broad enough to permit denial." *Growler Station, Inc. v. Foundry Growler Station, LLC*, No. 4:18-CV-0232-AT, 2019 WL 3769639, at *2 (N.D. Ga. Jan. 9, 2019) (quoting *Shipner v. E. Airlines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).  A district court may only deny leave to amend in this situation where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed;" (2) "allowing amendment would cause undue prejudice to the opposing party;" or (3) "amendment would be futile." *Bryant*, 252 F.3d at 1163.   None of these criteria exist here; consequently, the Court should allow the amendment.

II. **There has been no undue delay, bad faith, or repeated failure to cure pleading deficiencies.**

There has been no undue delay, bad faith, dilatory motive, or repeated failure to cure pleading deficiencies.  There certainly has been no bad faith or dilatory motive by Plaintiffs, and Defendants cannot claim otherwise.  And the pleading history in this case does not demonstrate an undue delay or a repeated failure by Plaintiffs to correct pleading deficiencies.  Plaintiffs amended once as a matter of course prior to any Defendant moving for dismissal.  But an amendment as a matter of course under Rule 15(a)(1) does not count as "one chance to amend," nor does it demonstrate a repeated failure to correct deficiencies. *Whatley v. Ohio Nat'l Life Ins. Co.*, 851 F. App'x 910, 919 (11th Cir. 2021); *accord Bryant*, 252 F.3d at 1163-

64. And this initial amendment was made without the benefit of Court's guidance on pleading deficiencies.

The Eleventh Circuit's reversal of a denial of leave to amend in *Bryant* is instructive. *Bryant*, 252 F.3d at 1163-65. There, the district court initially denied the defendants' motion to dismiss. *Id.* at 1163. The district court certified the order for immediate appeal. *Id.* Following remand from the appeal, the defendants renewed their motion to dismiss. *Id.* The district court granted the motion to dismiss with prejudice despite a request for leave to amend in the response briefing. *Id.* The Eleventh Circuit held that the district court abused its discretion in denying the amendment. *Id.* at 1163-65. The court rejected the district court's conclusion that plaintiffs' first amendment amounted to a "chance to amend," holding instead that an amendment made as a matter of course does not count as a "chance to amend" because it does not require leave of court. *Id.* at 1163-64. Thus, the court concluded that the first "chance to amend" did not occur until the plaintiffs sought leave to amend in response to the renewed motion to dismiss. *See id.* Similarly, here Plaintiffs filed their First Amended Complaint as a matter of course prior to any motion to dismiss being filed—which does not count as a chance to amend.

This Court and other district courts in this Circuit have recognized that ordinarily a plaintiff should be given an opportunity to correct pleading issues identified in a court's dismissal order. *See, e.g., Smith v. Ocwen Fin.*, No. 1:11-cv-

7

484, 2011 WL 13217843, at *1 (N.D. Ga. June 10, 2011) ("… a plaintiff should usually be allowed one opportunity to amend the complaint upon dismissal …"); *Nodd v. Integrated Airline Servcs., Inc.*, 41 F. Supp. 3d 1355, 1368 (S.D. Ala. 2014) (rejecting argument that plaintiff was on notice of pleading deficiencies through conferences with counsel and motions to dismiss because "the Court [did] not previously ha[ve] the opportunity to point out and address any of these claimed deficiencies"). The key is that a plaintiff must be given "fair notice of the defects and a meaningful chance to fix them." *Garcia v. Four BLF Doors, Corp.*, No. 20-CV-20024-UU, 2020 WL 12933754, at *3 (S.D. Fla. Mar. 26, 2020) (citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) and granting leave to file amended complaint after dismissal); *accord Ga. Power Co. v. Charter Communications, LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247036, at *6 (N.D. Ga. May 28, 2013) (denying motion for reconsideration but granting leave to amend because "it is proper to allow leave to amend after dismissal, even where the plaintiff may have had other opportunities to amend …").

Thus, the first time Plaintiffs here had notice of any pleading deficiencies occurred when the Court issued its MTD Order. Armed with that notice, Plaintiffs now seek to amend to cure those deficiencies, just as the plaintiffs did in above-cited district court cases. And the new pleading allegations relate to facts that Plaintiffs have uncovered since filing their First Amended Complaint.

### III. Allowing this amendment will not unduly prejudice Defendants.

Next, allowing this amendment will not unduly prejudice the Defendants. The mere passage of time does not amount to undue prejudice. *E.g., Bryant*, 252 F.3d at 1164. No party has yet filed any answer to the First Amended Complaint. And the fact the Court has not yet entered a scheduling order further demonstrates that Defendants will not be unduly prejudiced. *Nodd*, 41 F. Supp. 3d at 1368. In *Bryant*, the Eleventh Circuit held that a second amendment would not cause undue prejudice even though (a) defendants had already filed a motion to dismiss and a renewed motion to dismiss, and (b) the case had been pending for over three years. *Bryant*, 252 F.3d at 1164. Moreover, here the Court can use the extensive motion to dismiss briefing that already exists plus some short briefing specific to the new allegations. This should allow the Court to determine whether the new allegations should alter its rulings with respect to F&D and Conexus without forcing the parties to brief the motions to dismiss from scratch. And because the amendments do not impact other Defendants, the Court would not have to evaluate new motion to dismiss arguments by the other Defendants.

### IV. Allowing the amendment will not be futile.

Finally, the amendment will not be futile. An amendment is not futile if the cause of action, as amended, would survive a motion to dismiss. *St. Charles Food, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). In

making this determination, a district court must accept the new, factual allegations as true and construe those allegations in a light most favorable to the amending party. *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011).

As discussed at pages 2-5 herein, the new allegations against F&D and Conexus are substantially and materially similar to the allegations against Bennett Thrasher that this Court already ruled were sufficient to withstand a motion to dismiss on the fraud-based and conspiracy claims. These new and specific allegations show that F&D (1) aggressively marketed to its existing clients SCE Strategy transactions involving a different sponsor, (2) told those clients it had vetted these similar transactions and that they complied with the law, (3) worked directly with the sponsors to promote and implement these other SCE Strategy transactions, (4) told clients during the audits of these other transactions not to worry because the transactions were expertly structured to survive IRS scrutiny, and (5) were involved in a transaction with such bad inflation problems that the IRS imposed a civil fraud penalty and a criminal investigation is ongoing.

As to Conexus, the new and specific allegations further show that (1) Conexus aggressively marketed *Strategic-sponsored*, SCE Strategy transactions to its existing clients, (2) during one of the marketing campaigns, a Conexus partner told a client that he had been doing SCE Strategies for the past 5 years and had never had one be audited or lose money, and (3) another Conexus partner got a sweetheart deal to

10

participate in a SCE Strategy transaction involving a different sponsor through which the partner received a higher tax savings ratio than the other investors.[3]

Moreover, Plaintiffs have detailed specific accounting duties that required F&D and Conexus to perform due diligence into the appraisals based on the extraordinary valuations being reported on the partnership tax returns and K-1s.[4] Based on these duties, Plaintiffs allege that F&D and Conexus could not simply perform "data entry" and ignore the implications of the numbers they were reporting.

As a result of these new allegations, this Court should hold (just as it did with respect to Bennett Thrasher) that F&D and Conexus were "heavily involved in another line of SCE Strategy transactions predicated on inflated deductions" and it is "at least plausible that [F&D and Conexus] would have known, or recognized, similar, improperly inflated appraisal values in the SCE Strategy transactions in this case." MTD Order at 145-46.

---

[3] Plaintiffs further allege that the appraisal for this transaction was also so badly inflated that the IRS has imposed a civil fraud penalty and players in the transactions are being investigated by a grand jury.

[4] In the MTD Order, the Court noted that if the appraisal numbers were high enough to alert the Return Preparer Defendants to the inflation issue, it is unclear how Plaintiffs would not have also noticed. *See* MTD Order at 144, n.49. These heightened duties provide the answer. Although an average taxpayer does not have the expertise or obligation to understand complex appraisal and tax issues, F&D and Conexus were duty-bound to investigate these issues based on the information they were being given by the sponsors and appraisers.

## CONCLUSION

The Court should grant Plaintiffs leave to file their Second Amended Complaint.

This 18th day of September, 2023.

                        Respectfully submitted,

                        /s/ *Jeven R. Sloan*
                        David R. Deary (admitted *pro hac vice*)
                        W. Ralph Canada, Jr. (admitted *pro hac vice*)
                        Jeven Sloan (GA Bar No. 652727)
                        Tyler M. Simpson (admitted *pro hac vice*)
                        John McKenzie (admitted *pro hac vice*)
                        Donna Lee (admitted *pro hac vice*)
                        **DEARY RAY LLP**
                        12377 Merit Drive, Suite 900
                        Dallas, Texas 75251
                        (214) 572-1700 Telephone
                        (214) 572-1717 Facsimile
                        davidd@dearyray.com
                        ralphc@dearyray.com
                        jevens@dearyray.com
                        tylers@dearyray.com
                        johnm@dearyray.com
                        donnal@dearyray.com


                        Edward J. Rappaport (GA Bar No. 594841)
                        erappaport@saylorlaw.com
                        **THE SAYLOR LAW FIRM LLP**
                        1201 W. Peachtree Street
                        Suite 3220
                        Atlanta, GA 30309
                        (404) 892-4400 Telephone

                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 18, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Jeven R. Sloan*
Jeven R. Sloan

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1

*/s/ Jeven R. Sloan*
Jeven R. Sloan
