**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

C. JACKSON HOOVER, et al.,

     Plaintiffs,

v.

STRATEGIC CAPITAL
PARTNERS, LLC, et al.,

     Defendants.

CIVIL ACTION FILE NO.
1:21-cv-01299-SEG

**DEFENDANT CHERRY BEKAERT LLP'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

The Court dismissed Plaintiffs' claims against Defendant Cherry Bekaert LLP ("Cherry Bekaert") previously and it should do so again. Plaintiffs sprinkled in a few purportedly new allegations in the Second Amended Complaint ("SAC," Dkt. 446), but they do not fix the fundamental pleading deficiencies that the Court noted in its prior dismissal order.

As an initial matter, Plaintiffs have still not clarified which party they want to sue. The SAC purports to allege claims against "Cherry Bekaert f/k/a CoNexus," "CoNexus CPA Group," or simply "CoNexus." But Cherry Bekaert and CoNexus are two separate legal entities and Cherry Bekaert was never known as CoNexus. If Plaintiffs intend to pursue Cherry Bekaert as a successor, they have alleged not one

fact to establish successor liability in the SAC.  The SAC should be dismissed with prejudice as to Cherry Bekaert on that basis.  *See* Section C below.

Even if they had named a proper defendant, Plaintiffs do not – and cannot – state a claim against Cherry Bekaert.  In its initial dismissal order, the Court made clear what Plaintiffs had to allege to state claims against Cherry Bekaert: "allegations about [Cherry Bekaert's] knowledge of the fraudulent nature of the SCE Strategy."  Dkt. 383 at 199.  In this their third complaint, Plaintiffs still have not done that.  The SAC should therefore be dismissed with prejudice as to Cherry Bekaert.  See Section D below.

## I.      ARGUMENT

### A.      Legal Standard for Motion to Dismiss

Cherry Bekaert incorporates the portion of the Court's August 21, 2023 Order setting forth the legal standard for Rule 12(b)(6) motions.  (Dkt. 383 at 59-62).

### B.      Plaintiffs Do Not Attempt to Revive Six of the Previously Dismissed Claims

As an initial matter, Plaintiffs purport to assert several claims against CoNexus that were previously dismissed, and for which Plaintiffs assert no new factual allegations.  These claims are the following:

- Count II - Conspiracy to Violate Federal RICO

- Count V - Professional Malpractice

- Count VII - Negligent Misrepresentation

- Count VIII - Breach of Fiduciary Duty

- Count X - Aiding and Abetting Breaches of Fiduciary Duty

- Count XI - Recission

Because Plaintiffs have not set forth any new factual allegations to address the deficiencies previously identified by the Court, and the Court denied Plaintiffs' motion for reconsideration of the prior dismissal order, the Court should dismiss Counts II, V, VII, VIII, X, and XI as to Cherry Bekaert for the same reasons stated in its prior order.[1]

The only three claims that the Court granted Plaintiffs leave to assert in the SAC against Cherry Bekaert are the following:

- Count IV - Conspiracy to Violate Georgia RICO

- Count IX - Common law Fraud

- Count XII - Civil Conspiracy

Counts IV, IX, and XII, which are based solely on the alleged conduct of CoNexus, should be dismissed as to Cherry Bekaert for the reasons discussed below.

---

[1] Considering the Court's ruling on Plaintiffs' request of reconsideration and request for leave to file a second amended complaint (Dkt. 445), Cherry Bekaert presumes that the references to "CoNexus" for these claims is an oversight, and that Plaintiffs are no longer pursuing these claims against Conexus or Cherry Bekaert.

### C.    Plaintiffs fail to allege that Cherry Bekaert is proper defendant

Plaintiffs concede that Cherry Bekaert had nothing to do with any of the matters alleged in the SAC.  Underscoring that it is solely CoNexus' alleged conduct at issue, Plaintiffs reference "Conexus" instead of Cherry Bekaert throughout the SAC.  The alleged conduct also predates Cherry Bekaert's purchase of certain assets of CoNexus.  The only possible argument for naming Cherry Bekaert in this matter is that it is somehow a successor, but Plaintiffs have alleged no facts – because there are none – in support of that theory of liability.

Judge Posner of the U.S. Court of Appeals for the Seventh Circuit has noted that "[m]ost states limit [successor] liability . . . to sales in which a buyer (the successor) expressly or implicitly assumes the seller's liabilities."  *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013).  Here, Plaintiffs attempt to establish successor liability on Cherry Bekaert through one conclusory, and factually inaccurate, allegation:  "In or around August 2020, Cherry Bekaert LLP acquired Conexus CPA Group, LLC, and through this acquisition assumed the liabilities of Conexus CPA Group, LLC, including the claims made in this case." (Dkt. 446 ¶ 51).  The July 31, 2020 Asset Purchase Agreement ("APA") between Cherry Bekaert and CoNexus disproves this allegation.  Attached as Exhibit A is a

copy of the APA.[2]  Under the incorporation-by-reference doctrine, the Court may consider the APA in ruling on this motion because the agreement is central to Plaintiffs' claims against Cherry Bekaert and the authenticity of the agreement should be undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298-1304 (11th Cir. 2024).[3]

At the outset, the APA says Cherry Bekaert "has agreed to purchase only those assets and assume only those liabilities as hereinafter identified and upon the terms and conditions hereinafter set forth."  APA at 1 (third WHEREAS para).  Then, "ASSUMED LIABILITIES" is defined as "none, except for the liabilities specifically referenced in paragraphs 2 and 3."  APA § 1.3.  Nowhere in those

---

[2] The copy of the APA filed with this motion omits the exhibits to the APA, which are titled as follows:  (1) Exhibit A - Fixed Assets, (2) Exhibit B - Equipment Leases, (3) Exhibit C - Clients List, (4) Exhibit D - Intentionally Deleted, (5) Exhibit E - Form of Employment Agreement, (6) Exhibit F - Accounts Receivable, (7) Exhibit G - Unbilled Work in Progress, (8) Exhibit H - Bill of Sale and Assignment/Assumption Agreement, (9) Exhibit I - Prepaid Engagements, (10) Exhibit J - Disclosure of Threatened or Pending Litigation of Claims, (11) Exhibit K - Restated Partnership Agreement, (12) Exhibit L - Supplemental Agreement Horsley, and (13) Exhibit R - Approval by Buyer & Seller.  There are no Exhibits M or N to the APA.  The publicly filed version of the APA also includes redactions of the economic terms.  Cherry Bekaert is filing contemporaneously a motion for leave to file an unredacted copy of the APA.

[3] Cherry Bekaert's counsel previously offered to produce to Plaintiffs' counsel a copy of the APA.  Plaintiffs' counsel rejected the offer, preferring instead to attempt to remain willfully ignorant of the facts contradicting Plaintiffs' allegations. The Court should not countenance Plaintiffs' cynical approach here – to ignore the facts and pursue a party they perceive to have deeper pockets notwithstanding that party had nothing to do with the matters alleged in the complaint.

paragraphs, or elsewhere, is there language indicating that Cherry Bekaert assumed liability for the claims made in this case.  Cherry Bekaert assumed only certain obligations of CoNexus occurring *on or after the closing date* for the transaction, including its equipment leases and client list.  APA §§ 3.1, 3.2.  Emphasizing again Cherry Bekaert's limited assumption of liabilities, Paragraph 3.4 further specifies:

> Except as specifically provided in this Agreement, Buyer does not assume, acquire or purchase any obligation, liability, accrued expense, or claim (asserted or unasserted) of Seller, including, but not limited to, any obligation that Seller may have to its retired and former members, professionals and staff.  Seller shall remain liable for the payment of these obligations and liabilities.

The APA refutes Plaintiffs' allegation about assumed liabilities, on which their attempt to impose successor liability hinges.

Plaintiffs' failure to allege facts sufficient to establish that Cherry Bekaert is the proper defendant is grounds to dismiss all claims against Cherry Bekaert.  They cannot pursue claims against the wrong party through a disingenuous and misleading use of "f/k/a."

> **D.    Even if Cherry Bekaert were the proper defendant, which it is not, Plaintiffs again fail to plead the required elements of claims for conspiracy to violate Georgia RICO, common law fraud, and civil conspiracy**

The Court previously found Plaintiffs failed to state claims for conspiracy to violate Georgia RICO, common law fraud, and civil conspiracy in the First Amended Complaint (Dkt. 108).  The Court having found the prior allegations insufficient, and

6

to avoid retreading old ground, Cherry Bekaert focuses in this motion on whether the new allegations change anything.  They do not.

### 1.    Count IV - Conspiracy to Violate Georgia RICO

Under the Georgia RICO statute, O.C.G.A. §§ 16-14-1 *et seq.*, conspiracy to violate Georgia RICO is contained in O.C.G.A. § 16-14-4(c), while ordinary RICO violations are laid out in O.C.G.A. § 16-14-4(a) and (b).  A conspiracy claim requires (1) a person (2) in conjunction with another individual (3) who conspires to violate subsection (a) or (b) of the statute, and (4) any one or more person commits an overt act to effect the object of the conspiracy, or (5) any person endeavors to violate subsection (a) or (b) and commits an overt act to effect the endeavor.  O.C.G.A. § 16-14-4(c).  To establish a civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate the state's RICO act, and that violation injured the plaintiff.  *De la Fuente v. Columbia Recycling Corp.*, 704 F. Supp. 3d 1333, 1339 (N.D. Ga. 2023); *see also* O.C.G.A. § 16-14-6 (authorizing civil right of action for RICO violations).

Most importantly, defendants are only liable for violating § 16-14-4(c) if "they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Rosen v. Protective Life Ins.*, 817 F. Supp. 2d 1357, 1382 (N.D. Ga. 2011) (quoting *S. Intermodal Logistics, Inc. v.*

*D.J. Powers Co.,* 10 F. Supp. 2d 1337, 1360–61 (S.D. Ga.1998) (liability only if defendant "knowingly and willfully joins a conspiratorial scheme")).[4]

This "knowingly and willfully" requirement was the basis for the Court's prior dismissal of the Georgia RICO claim against Cherry Bekaert. In its August 21, 2023 Order, the Court carefully distinguished between allegations against various so-called "return preparer defendants," including Bennett Thrasher and Cherry Bekaert. The Court found the allegations against Bennett Thrasher were ***sufficient*** because Plaintiffs alleged (i) Bennett Thrasher was aware of inflated appraisals in other syndicated conservation easement ("SCE") transactions and (ii) even advised another SCE sponsor on how to "improperly inflate the appraisals." (Dkt. 383 at 146 (citing/quoting Dkt. 109 ¶ 105)). The Court explained, "[f]or if Bennett Thrasher *actively worked to inflate appraisal values in another set of SCE transactions*, it is at least plausible that it would have known, or recognized, similar, improperly inflated appraisal values in the SCE transactions in this case." (Dkt. 383 at 146 (emphasis added)). But the Court concluded that there were no such allegations as to Cherry Bekaert:

> Nor are there . . . additional allegations about these defendants' knowledge of the fraudulent nature of the SCE Strategy, in contrast with Bennett Thrasher. Thus, the same dearth of factual allegations that makes it implausible that these defendants committed fraud also makes

---

[4] See also the Court's discussion of Georgia law on conspiracy to violate Georgia RICO claims. (Dkt. 383 at 117-27).

it implausible that they agreed with others to do so.  No allegations allow the Court to infer anything other than the "obvious alternative explanation" that these defendants were engaged in ordinary business activities.

(Dkt. 383 at 199).

There are still no such allegations as to Cherry Bekaert.  The SAC adds the following allegations as to Conexus.

- "Conexus was . . . no stranger to the SCE Strategy when it began preparing returns for the Syndicates" (Dkt. 446 ¶ 109);

- "Conexus partner, Jeff Horsley, aggressively promoted Strategic-sponsored, SCE Strategy transactions, to his clients," including telling "one of his clients in 2015 that he had been dealing with conservation transactions for the past 5 years or so with his clients and had invested personally," and that "he had not lost any money so far and none of the transactions had even been audited" (*id.* ¶ 109);

- "In 2017, at least one Conexus partner participated in a SCE Strategy transaction by another sponsor," he got a 'friends and family' deal on the transaction," and "was given a 15:1 ratio of tax savings to investment amount as opposed to the 5:1 ratio the normal investors were offered." (*id.* ¶ 110);

- The transaction in which the Conexus partner invested was later subject to an IRS penalty and a criminal investigation. (*id.*)

There is no new allegation that Conexus (or Cherry Bekaert) advised anyone on how to "improperly inflate the appraisals."  And there is no new allegation satisfying the "essential element of any fraud claim" – "that the defendant knew his representation was false.'" (Dkt. 383 at 125 (quoting *Lechter v. Arpio*, LLP, 565 F. Supp. 3d 1279, 1318 (N.D. Ga. 2021)).  At best, the allegation speaks to participation in transactions that, after the fact, came under scrutiny.  That is not an allegation of knowledge for

9

purposes of a fraud claim. *Mauro v. Wells Fargo Bank*, No. 1:21-CV-3841-MLB, 2022 WL 16543278, at \*4 (N.D. Ga. June 17, 2022) (citing *Est. of Shannon v. Ahmed*, 696 S.E.2d 408, 410 (Ga. Ct. App. 2010)) (holding that "fraud requires contemporaneous knowledge of falsity").

In other words, the SAC suffers from the same "dearth of factual allegations" that the Court found existed with the prior complaint. Without the type of specific allegations the Court focused on with respect to Bennett Thrasher providing advice and recommendations to a sponsor, Plaintiffs allege nothing more than ordinary business activities by Conexus. The conspiracy to violate Georgia RICO claim should be dismissed with prejudice as to Cherry Bekaert based on the failure to plead facts plausibly suggesting that CoNexus or Cherry Bekaert knew of any alleged underlying fraud.

### 2.    Count XII - Civil Conspiracy

Civil conspiracy under Georgia law is not a separate cause of action, but the claim lies "in the underlying tort committed against the plaintiff and the resulting damage." *McKesson Corp .v. Green*, 683 S.E.2d 336, 343 (Ga. Ct. App. 2009) (quoting *Dyer v. Honea*, 557 S.E.2d 20, 25 (Ga Ct. App. 2001). The conspiracy itself furnishes no cause of action absent an underlying tort that conspirators planned or intended and caused injury to the plaintiff. *Jones v. Spindel*, 147 S.E.2d 615, 616 (Ga. App. Ct. 1966). Defined simply, "[a] conspiracy is a combination of two or

10

more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *U.S. Anchor Mfg. v. Rule Indus.*, 443 S.E.2d 833 (1994).[5]

In its August 21, 2023 Order, the Court found that Plaintiffs failed to plead a plausible civil conspiracy claim against Cherry Bekaert for the same reasons they had not pleaded a conspiracy to violate Georgia RICO. (Dkt. 383 at 205). Because the new allegations are not sufficient to plead a plausible claim for civil conspiracy to violate Georgia RICO, neither are they sufficient to plead a plausible civil conspiracy claim. The civil conspiracy claim fails again.

### 3.    Count IX - Common Law Fraud

Georgia common law fraud has similar elements to other jurisdictions' fraud claims. "Under Georgia law, '[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.'" *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (quoting *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000)).[6] Plaintiffs must plead common law fraud with particularity. *Coface N. Am. Ins. Co. v. Davis*, No. 1:19-CV-0242-AT, 2019 WL 7831142, at *5 (N.D. Ga. June 21, 2019)

---

[5] See also the Court's discussion of Georgia law on civil conspiracy. (Dkt. 383 at 205).

[6] See also the Court's discussion of Georgia law on common law fraud. (Dkt. 383 at 202).

("Consequently, Plaintiff's allegation that Davis either committed fraud or was part of a fraudulent conspiracy is conclusory and does not meet the Rule 9(b) particularity threshold to state a claim for fraud under Georgia common law.").

In its August 21, 2023 Order, the Court found that Plaintiffs "failed to plead common law fraud claims against Cherry Bekaert for the same reason Plaintiffs failed to plead RICO predicate acts by the Return Preparer Defendants." (Dkt. 383 at 204). On this issue, "the Court conclude[d] that Plaintiffs' well-pled allegations about the tax preparation work of [Frazier & Deeter ("F&D") and the Langford Defendants], which are generally quite limited, do not suffice to plead that each committed predicate acts of mail or wire fraud." (*Id.* at 143). The Court found that "[t]he core issue with respect to the Langford Defendants and F&D is that 'there are no allegations that would plausibly suggest that the [Return Preparer Defendants] *knew* that these representations—those contained in the Schedule K-1 and the associated cover letters—'were fraudulent.'" (*Id.* at 143 (quoting *Turk v. Morris, Manning & Martin, LLP*, 593 F. Supp. 3d 1258, 1306 (N.D. Ga. 2022))). Indeed, "the very few paragraphs in the FAC about the Langford Defendants' and F&D's specific conduct do not plausibly support the notion that they were doing more than performing ordinary business services—that is, sending the necessary tax documents to an LLC member after being engaged to prepare a return for the LLC." (Dkt. 383 at 144-145).

Although arising in the context of the Court noting that Plaintiffs have not asserted substantive RICO claims against Cherry Bekaert, the Court stated Plaintiffs had not alleged that CoNexus or Cherry Bekaert knew of any underlying fraud or were engaged in anything other than ordinary business activities: "[T]he factual allegations regarding CoNexus would face the same difficulties as those regarding the Langford Defendants and F&D—namely, no factual allegations plausibly suggest it knew of the underlying fraud or was engaged in anything other than ordinary business activities." (*Id.* at 142 n.48). The same is true now; there is still no substantively or materially similar allegation against CoNexus or Cherry Bekaert in the SAC. As discussed more fully above in Section I.D.1., the new allegations against CoNexus do not suggest that CoNexus or Cherry Bekaert knew of any alleged underlying fraud, and many are merely consistent with ordinary business activities. Without the specific allegation the Court focused on with respect to Bennett Thrasher providing advice on inflated appraisals to a sponsor, thus plausibly suggesting that Bennett Thrasher knew of the alleged underlying fraud, the common law fraud claim in the proposed SAC is still subject to dismissal for the same reason as before.

## II.    CONCLUSION

For the reasons discussed above, Cherry Bekaert is not the proper defendant to this action, and the limited new allegations do not address the pleading

deficiencies previously identified by the Court with respect to the substantive claims against Cherry Bekaert. The Court should dismiss all claims asserted against Cherry Bekaert, on both grounds.

Respectfully submitted, this 7th day of July 2025.

s/ Andrew S. Koelz
Eric Jon Taylor
Georgia Bar No. 699966
etaylor@Hunton.com
Andrew S. Koelz
Georgia Bar No. 208399
akoelz@Hunton.com
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone:       (404) 888-4000
Facsimile:       (404) 888-4190

**Counsel for Defendant
Cherry Bekaert LLP**

## CERTIFICATE OF COMPLIANCE

In compliance with N.D. Ga. R. 7.1.D., I certify that the foregoing **DEFENDANT CHERRY BEKAERT LLP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** has been prepared in conformity with N.D. Ga. R. 5.1. The memorandum was prepared with Times New Roman (14-point) type, with margins of at least one (1) inch. The memorandum is proportionately spaced, and is no longer than 25 pages.

This 7th day of July 2025.

s/ Andrew S. Koelz
Andrew S. Koelz
Georgia Bar No. 208399

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day electronically filed the foregoing **DEFENDANT CHERRY BEKAERT LLP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

This 7th day of July 2025.

s/ Andrew S. Koelz
Andrew S. Koelz
Georgia Bar No. 208399